## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

| | |
|---|---|
| FRANCISCAN VINEYARDS, INC. | ) |
| | ) |
| **Appellant,** | ) |
| | ) |
| v. | ) |
| | ) **Appeal No. 2014-** |
| DOMAINES PINNACLE, INC. | ) |
| **Appellee.** | ) |
| | ) |
| **Opposition No. 91178682** | ) |

## NOTICE FORWARDING CERTIFIED LIST

A notice of appeal to the United States Court of Appeals for the Federal Circuit was timely filed on December 16, 2013, in the United States Patent and Trademark Office in connection with the above-identified opposition proceeding. Pursuant to 15 U.S.C. § 1071(a)(3) and Federal Circuit Rule 17(b)(1), the United States Patent and Trademark Office (USPTO) is today forwarding, to counsel for Appellant and Appellee, a certified list of documents comprising the record in the USPTO.

Counsel for Appellant may contact counsel for the Appellee to arrange for designating the appendix. *See generally* Fed. Cir. Rule 30(b).

If a copy of the notice of appeal and the docketing fee of $500.00 have not been filed with the Federal Circuit, counsel is reminded that a copy

of the notice and the docketing fee should be promptly filed with the Federal

Circuit.

The mailing address of the Federal Circuit is:

> U.S. Court of Appeals for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, DC 20439

All papers served on the Solicitor in connection with this appeal shall

deliver them as follows:

By hand:   Office of the Solicitor
           Madison West
           600 Dulany Street, Room 08C43A
           Alexandria, VA

By mail:   Office of the Solicitor
           Mail Stop 8, P.O. Box 1450
           Alexandria, VA 22313-1450

Respectfully submitted,

**Michelle K. Lee**
Deputy Under Secretary of Commerce
for Intellectual Property and Deputy
Director of the United States Patent
and Trademark Office

Date: January 28, 2014           By: Macia L. Fletcher

**Macia L. Fletcher**
Paralegal Specialist
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
571-272-9035

# BAKER AND RANNELLS, P.A.

## INTELLECTUAL PROPERTY ATTORNEYS

STEPHEN L. BAKER ♦
JOHN M. RANNELLS ♦
NEIL B. FRIEDMAN ♦
RYAN A. MCGONIGLE ♦

JASON L. DEFRANCESCO*
PEI-LUN CHANG 張培倫+

ADMITTED TO PRACTICE IN:
♦NEW YORK & NEW JERSEY
+NEW JERSEY
* WASHINGTON, DC & FLORIDA
  & REG. PATENT ATTORNEY

575 ROUTE 28 - SUITE 102
RARITAN, NEW JERSEY 08869
TELEPHONE (908) 722-5640
FACSIMILE (908) 725-7088
WWW.TMLAWWORLDWIDE.COM

NEW YORK OFFICE
570 LEXINGTON AVENUE
10TH FLOOR
NEW YORK, NY 10022
TELEPHONE (212) 481-7007
FACSIMILE (800) 688-8235

*PLEASE RESPOND TO THE NEW JERSEY ADDRESS*
EMAIL: JMR@BR-TMLAW.COM

December 13, 2013

*Via Express Mail*

**Director**
**Office of the General Counsel**
**United States Patent and Trademark Office**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**

Dear Sir/Madam:

    Enclosed herewith is a Notice of Appeal in re Franciscan Vineyards, Inc. v. Domaines Pinnacle, Inc. / Opposition No. 91178682. The Appellant is the plaintiff, Franciscan Vineyards, Inc. Accompanying the Notice is a copy of the decision being appealed from (i.e., Decision dated October 16, 2013.

    A copy is also being filed with the Trademark Trial and Appeal Board and the three copies are being sent to the United States Court of Appeals for the Federal Circuit.

    If you require anything further, please contact the undersigned.

Very truly yours,

John M. Rannells
Attorney for Appellant
Franciscan Vineyards, Inc.

TRADEMARK OFFICE
US PATENT AND

2013 DEC 16 PM 4: 08

OFFICE OF THE GENERAL COUNSEL

> **This Opinion is Not a Precedent of the TTAB**

Mailed:
October 16, 2013

**United States Patent and Trademark Office**

Trademark Trial and Appeal Board

———

*Franciscan Vineyards, Inc.*

*v.*

*Domaines Pinnacle, Inc.*

———

Opposition No. 91178682

to application Serial No. 78783236

———

John M. Rannells, Stephen L. Baker, Linda Kurth and Ryan A. McGonigle of Baker and Rannells PA for Franciscan Vineyards, Inc.

Domaines Pinnacle, Inc., *pro se.*[1]

———

Before Quinn, Lykos and Hightower, Administrative Trademark Judges.

Opinion by Lykos, Administrative Trademark Judge:

On December 30, 2005, Domaines Pinnacle, Inc. ("applicant"), a Canadian corporation, filed an intent-to-use application to register the mark displayed below

---

[1] Based on a conflict of interest, on April 20, 2009, applicant's attorney withdrew as legal counsel in this proceeding. In accordance with Board procedure, applicant informed the Board on May 26, 2009 that it intended to represent itself in this proceeding.



for "[a]pple juices and apple-based non-alcoholic beverages" in International Class 33.[2] The description of the mark is as follows: "The mark consists of [a] drawing of an apple in reverse image with a snowflake on top of the apple above the words Domaine Pinnacle. The word Domaine is on top of Pinnacle." In addition, the application includes a translation statement ("The foreign wording in the mark translates into English as estate.") as well as a disclaimer of the word DOMAINE.

Franciscan Vineyards, Inc. ("opposer") opposed the registration of applicant's mark on the grounds of priority of use and likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d),[3] with opposer's previously used and registered mark PINNACLES in standard character for-

---

[2] Application Serial No. 78783236, filed December 30, 2005 pursuant to Section 1(b) of the Trademark Act.

[3] Opposer also asserted a claim that applicant lacks a bona fide intent to use the mark in commerce for the goods identified in the application based on the allegation that "[a]pplicant's business is limited to the manufacture and sale of alcoholic beverages derived from apples," and a claim that applicant's applied-for mark is "primarily geographically descriptive." See First Amended Notice of Opposition (filed September 24, 2008), ¶¶ 13-14, and 16. Insofar as opposer has not argued these claims in its brief, in accordance with the Board's usual practice we find those claims to have been waived by opposer. See e.g., Knight Textile Corp. v. Jones Investment Co., 75 USPQ2d 1313, 1314 n.4 (TTAB 2005).

mat for "wine" in International Class 33, as well as "variations thereof."[4] Op-
poser's First Amended Notice of Opposition, ¶ 1. While opposer did not specifi-
cally plead ownership of the registered mark PINNACLES RANCHES[5] for
"wines" in its notice of opposition, insofar as applicant did not object to the in-
troduction of a certified status and title copy of the registration at trial, we
hereby deem the pleadings amended by implied consent. *See* Fed. R. Civ. P.
15(b).

In its answer to the amended notice of opposition,[6] applicant admitted
opposer's ownership of its pleaded registration but otherwise denied the sali-
ent allegations therein.

I. *The Record*

The record includes the pleadings, and pursuant to Trademark Rule
2.122(b), applicant's application file. Applicant neither introduced evidence at
trial nor filed a brief.

Opposer properly made of record the following notices of reliance:

> Notice of Reliance No. 1 comprised of certified status and title
> copies of opposer's pleaded Registration No. 997378 for the mark
> PINNACLES for "wines" and Registration No. 4072330 for the

---

[4] Registration No. 997378, registered on November 5, 1974 on the Principal Register.
The registration alleges May 12, 1971 as the date of first use anywhere and in com-
merce; renewed.

[5] Registration No. 4072330, registered on December 20, 2011, alleging May 2004 as
the date of first use anywhere and in commerce. The term RANCHES is disclaimed.

[6] Opposer's first amended notice of opposition is the operative complaint in this case.
See January 13, 2009 Board Order.

- *3* -

mark PINNACLES RANCHES for "wines" with a disclaimer of RANCHES;[7]

Notice of Reliance No. 2 comprised of the file wrapper for applicant's abandoned application Serial No. 76596876 for the mark DOMAINE PINNACLE and design;

Notice of Reliance No. 3 comprised of dictionary and glossary definitions of the terms "domaine" and "estate;" and

Notice of Reliance No. 4 comprised of printouts from applicant's website, www.domainepinnacle.com.

Opposer also introduced the following testimony depositions:

Juan Fonseca, opposer's Director of Marketing for the Estancia and Mark West wine brands for Constellation Brands, Inc.,[8] with Exhibits 1-8 attached thereto; and

Lou Applebaum, Vice President of Business Development for Constellation Brands, Inc., with Exhibits 1-9 attached thereto.

III. *The Parties*

Opposer is a wholly-owned subsidiary of Constellation Brands, Inc., an international wine company and U.S. beer importer. Applebaum Deposition, 8:15-19, 9:25 and 10:2; Fonseca Deposition, 10:6-7. Other subsidiaries falling under opposer's parent umbrella include Inniskillin and Jackson-Triggs, "very well-known" wine brands/producers located in Canada, as well as Growers Cider, a Canadian cider producer. Fonseca Deposition, 11:20-12:12. Opposer's PINNACLES and PINNACLES RANCHES wines are produced by the Estancia Winery located in Soledad, California. Fonseca Deposition, 10:8-17.

---

[7] The mark PINNACLES RANCHES registered during the course of this proceeding on December 20, 2011.

[8] Opposer is a wholly-owned subsidiary of Constellation Brands, Inc.

Applicant is "a family-owned orchard and cidery" located in Quebec, Canada on the southern slopes of Pinnacle Mountain near the village of Frelighsburg. Opposer's Notice of Reliance No. 4. Applicant's website shows the products bearing the involved mark identified as "ice apple wine." *Id.*

IV.    *Standing*

Opposer has demonstrated through the certified title and status copies made of record with its first notice of reliance that it is the owner of registrations for the marks PINNACLES and PINNACLES RANCHES, and that both registrations are valid and subsisting. Because opposer's registrations are of record, opposer has established its standing. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000); *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982).

V.    *Section 2(d) Claim*

We will now consider opposer's Section 2(d) claim.

A.    *Priority*

With regard to both of opposer's marks PINNACLES and PINNACLES RANCHES, priority is not in issue in view of opposer's ownership of valid and subsisting registrations for both marks for goods identified as "wine." *See King Candy, Inc. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).

B.    *Likelihood of Confusion*

The remaining issue in this case is likelihood of confusion. As noted earlier, applicant neither submitted evidence during its assigned testimony period nor filed a brief. Nonetheless, opposer, as plaintiff in this proceeding, bears the burden of establishing that there is a likelihood of confusion by a preponderance of the evidence.

We base our determination under Section 2(d) on an analysis of all of the probative evidence of record bearing on a likelihood of confusion. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) ("*du Pont*"). *See also, In re Majestic Distilling Company, Inc.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). "Not all of the du Pont factors are relevant to every case, and only factors of significance to the particular mark need be considered." *In re Mighty Leaf Tea*, 601 F.3d 1342, 1346, 94 USPQ2d 1257, 1259 (Fed. Cir. 2010). For example, the Board can "focus ... on dispositive factors, such as similarity of the marks and relatedness of the goods." *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002) (citation omitted). These factors, and the other relevant *du Pont* factors are discussed below.

1.    *The Marks*

First, we turn to the *du Pont* likelihood of confusion factor regarding the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *See Palm Bay Imports*

*Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005). "[T]he test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression so that confusion as to the source of the goods offered under the respective marks is likely to result." *H.D. Lee Co. v. Maidenform Inc.*, 87 USPQ2d 1715, 1727 (TTAB 2008). The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *In re Binion*, 93 USPQ2d 1531 (TTAB 2009); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975).

"[A] particular feature of a mark may be more obvious or dominant, and therefore, when determining likelihood of confusion, greater weight ought to be given to the force and effect of such a feature." *Kangol Ltd. v. KangaROOS U.S.A., Inc.*, 974 F.2d 161, 23 USPQ2d 1945, 1946 (Fed. Cir. 1992) (internal citations omitted). We acknowledge the differences in wording and presence of the design element in applicant's mark. Nonetheless, it is more likely that prospective consumers will overlook these minor distinctions and instead confuse the marks as originating from the same source, given that they either contain or consist solely of the literal element "pinnacle" or "pinnacles." It is well established that when a mark consists of a word portion and a design portion, the word portion is more likely to be impressed upon a purchaser's memory and to be used in calling for the services; therefore, the word portion

is normally accorded greater weight in determining whether marks are confusingly similar. *In re Dakin's Miniatures, Inc.*, 59 USPQ2d 1593, 1596 (TTAB 1999). *See also CBS Inc. v. Morrow*, 708 F.2d 1579, 1581-82, 218 USPQ 198, 200 (Fed. Cir 1983); *In re Kysela Pere et Fils, Ltd.*, 98 USPQ2d 1261, 1267-68 (TTAB 2011). Moreover, the term "pinnacle" as it appears in applicant's composite mark is more likely to be remembered by prospective consumers given its display in larger, more prominent lettering in relation to the term "domaine" which appears in smaller size font.

We are further guided by the principle that disclaimed matter in a mark typically is of less significance in creating a commercial impression. *See In re Dixie Rests. Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997) (finding "delta" the dominant part of the mark THE DELTA CAFÉ because CAFÉ was disclaimed). As noted in the registration and reflected in the record, the disclaimed term "domaine" is the French word for "estate," and is now widely used in the U.S. wine industry as designating the name of a winery. Notice of Reliance No. 3 (entries for "domaine" from *Merriam-Webster's French-English Dictionary* and *Wine Dictionary* at www.thewinebuyer.com). The descriptive significance of the term "domaine," coupled with the relatively larger size and center placement of the term PINNACLE in relation thereto, make PINNACLE the dominant element in applicant's mark. Similarly, the term "ranches" as used in the registered mark PINNACLES RANCHES is disclaimed, reflecting its descriptive significance as "a place where ... crops are

grown and it could include grapes." Fonseca Deposition, 20:15-21:1. As such,
we find that the involved marks are highly similar in sound and appearance.

With regard to the connotation and commercial impression of the
marks, opposer presented testimony that the word "pinnacle" means "the top,
the peak, the best." Fonseca Deposition, 21:2-5. The record also shows that
"Pinnacle" is the name of the mountain in Quebec, Canada where applicant's
apple orchard is located. Opposer's Notice of Reliance No. 4. As such, prospec-
tive consumers viewing opposer's marks, which contain the plural version of
the word "pinnacle," are more likely to ascribe the latter meaning to the mark.
In any event, as used in connection with both applicant's and opposer's goods,
the significance of the term PINNACLE or PINNACLES is highly similar.

We therefore find that opposer's marks and applicant's mark are simi-
lar in appearance, sound, connotation and commercial impression. This first
*du Pont* factor weighs in favor of finding a likelihood of confusion.

### 2.   *Fame of the Prior Mark*

We now consider the fifth *du Pont* factor of the fame of opposer's marks.
Fame, if it exists, of the prior mark plays a dominant role in likelihood of con-
fusion cases featuring a famous mark. *Bose Corp. v. QSC Audio Products Inc.*,
293 F.3d 1367, 63 USPQ2d 1303 (Fed. Cir. 2002); *Recot Inc. v. M.C. Becton*,
214 F.3d 1322, 54 USPQ2d 1894 (Fed. Cir. 2000). Fame for likelihood of con-
fusion purposes may be measured indirectly by the volume of sales and adver-
tising expenditures of the goods sold under the mark, for example, and other

factors such as length of time of use of the mark, widespread critical assessments, notice by independent sources of the products identified by the marks, and the general reputation of the products and services. *Bose Corp. v. QSC Audio Products, Inc.*, 63 USPQ2d at 1308. Because of the extreme deference accorded to a famous mark in terms of the wide latitude of legal protection it receives, and the dominant role fame plays in the likelihood of confusion analysis, it is the duty of the party asserting fame to clearly prove it. *Lacoste Alligator S.A. v. Maxoly Inc.*, 91 USPQ2d 1594, 1597 (TTAB 2009); *Leading Jewelers Guild Inc. v. LJOW Holdings LLC*, 82 USPQ2d 1901, 1904 (TTAB 2007).

Opposer argues that its PINNACLES mark is famous based on over 40 years of continuous use. Opposer also points to worldwide sales (in U.S. dollars) at the wholesale level for both PINNACLES and PINNACLES RANCHES for the years 2001-2013,[9] as well as accolades from print publications such as *The Wall Street Journal*, *Wine Spectator*, *Wine Enthusiast*, and *Food and Wine Magazine*. Fonseca Deposition, Ex. 7; Applebaum Deposition, Ex. 9.

Opposer's evidence falls short of establishing opposer's PINNACLES and/or PINNACLES RANCHES marks as famous for likelihood of confusion purposes. The sales figures submitted by opposer are flawed because they consist only of worldwide sales without breaking down the data for wine sold

---

[9] The data consists of worldwide sales at the wholesale level for fiscal years 2001-12 (with data for part of fiscal year 2013) sold under both the PINNACLES and PINNACLES RANCHES brand. Opposer's fiscal year is March 1 through the end of February. Applebaum Deposition, 22:9-25, 23:2-15, and Ex. 9.

in the United States. In addition, the few instances of unsolicited media recognition, without more, are insufficient to support opposer's assertion that its wine sold under the PINNACLES and/or PINNACLES RANCHES marks enjoy wide brand name recognition among consumers. *Compare Palm Bay, supra* (VEUVE CLICQUOT found famous among purchasers of champagne and sparkling wine based upon sale in 8000 restaurants nationwide, liquor stores, wine shops and other retail establishments; extensive promotional campaign consisting of print advertisements in general interest magazines and in wine specialty magazines, radio ads, point-of-sale displays, wine tastings; and unsolicited recognition in *New York Times*, *Boston Globe*, *Money Magazine*). This *du Pont* factor is therefore neutral.

3.    *Third-Party Uses*

Next we consider the sixth *du Pont* factor, namely the number and nature of similar marks in use on similar goods. Opposer contends that because the record is devoid of third-party uses of the marks PINNACLE, PINNACLES or PINNACLES RANCHES for wine, apple-based beverages or any other related goods or services, opposer's marks are strong.

Evidence of third-party use, however, is typically introduced at trial by the defendant, not the plaintiff. *See Palm Bay*, 73 USPQ2d at 1694 ("The purpose of a defendant introducing third-party uses is to show that customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different such marks on the

bases of minute distinctions."). Insofar as applicant took no testimony, the absence in the record of third-party uses cannot lead us to the factual determination that either of opposer's marks are strong and therefore deserving of a wide scope of protection. Furthermore, to the extent, if any, opposer is arguing that its mark is conceptually strong, we disagree, finding that the mark is suggestive for the reasons articulated above in our discussion of the first *du Pont* factor. Accordingly, we find this factor to be neutral.

### 4. *The Trade Channels/Purchasers*

Next we consider the third and fourth *du* Pont factors – the similarity or dissimilarity of established, likely to continue trade channels and the conditions under which and buyers to whom sales are made. In an *inter partes* proceeding before the Board, the issue of likelihood of confusion must be determined based on the goods recited in applicant's application vis-à-vis the goods identified in opposer's pleaded registration. *Cunningham v. Laser Golf Corp.*, 55 USPQ2d at 1846; *Canadian Imperial Bank v. Wells Fargo Bank*, 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1992). Because the identifications of goods in the involved application and registrations are unrestricted as to trade channels, we must presume that both parties' products travel in the ordinary trade and distribution channels and will be marketed to the same potential consumers. *See Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1360-61, 56 USPQ2d 1351, 1354 (Fed. Cir. 2000) ("When the registration does not contain limitations describing a particular channel of trade or

class of customer, the goods or services are assumed to travel in all normal channels of trade."). *See also In re Elbaum*, 211 USPQ 639, 640 (TTAB 1981), *citing Kalart Co., Inc. v. Camera-Mart, Inc.*, 258 F.2d 956, 119 USPQ 139 (CCPA 1958). The record shows that the ordinary trade and distribution channels for opposer's wines are wholesalers and restaurants, as well as retail establishments such as liquor stores, wine merchants and for those states where permissible by law, grocery stores and other retail outlets such as convenience stores. Fonseca Deposition, 18:9-14. The ordinary trade channels for applicant's "[a]pple juices and apple-based non-alcoholic beverages" are wholesalers as well as retail store outlets such as grocery and convenience stores. As such, the trade channels for opposer's and applicant's goods overlap in part. In addition, both parties' goods will be encountered by the same prospective consumers. Hence, the third and fourth *du Pont* factors, the relevant trade channels and classes of consumers, weigh in favor of finding a likelihood of confusion.

### 5. The Goods

The next step in our analysis is a comparison of the goods identified in applicant's application vis-à-vis the goods identified in opposer's pleaded registrations. *See Cunningham v. Laser Golf Corp.*, 55 USPQ2d at 1846; *Canadian Imperial Bank v. Wells Fargo Bank*, 1 USPQ2d at 1815. In arguing that applicant's "[a]pple juices and apple-based non-alcoholic beverages" are related to opposer's wine, applicant relies primarily on the case of *In re Jacob*

*Demmer KG*, 219 USPQ 1199 (TTAB 1983), an *ex parte* appeal, where the Board affirmed the examining attorney's Section 2(d) refusal to register similar marks for "wines" and "apple cider." The Board, in determining that the goods in question were "sufficiently related," took judicial notice of the dictionary definition of "cider" to find that "…cider is a beverage which can be produced and marketed in alcoholic as well as non-alcoholic form. Indeed, cider is an appellation connoting not only non-alcoholic apple juice but fermented apple juice with alcohol content not significantly less than many wines." *Id.* at 1201. In addition, the Board relied on the dictionary definition of "wine" made of record to find that "…the fruit from which cider is made can also be used to make wines and the cider or apple juice itself can serve as a mixer in punches and cocktails featuring wines, brandy and cordials." *Id.* Opposer also points to the Board's decisions in *Coca Cola Co. v. Joseph E. Seagram & Sons, Inc.*, 526 F.2d 556, 188 USPQ 105 (CCPA 1975) (opposition sustained; BENGAL for gin versus BENGAL LANCER and design for non-alcoholic carbonated soft drinks) and *In re Rola Weinbrennerei Und Likorfabrik GmbH & Co. KG*, 223 USPQ 57 (TTAB 1984) (SUN APPLE stylized claiming the color red for apple flavored alcoholic liqueur versus SUNAPPLE stylized for powdered apple flavored soft drink.).

We cannot rely on the Board's determination in *Jacob Demmer* to make the same factual finding here that applicant's and opposer's goods are related. "[I]t is well established that each case … stands on its own facts, and prior de-

cisions are of little value." *In re Quik-Print Copy Shop, Inc.*, 616 F.2d 523, 205

USPQ 505, 507 (CCPA 1980). While applicant's goods identified as "apple-

based non-alcoholic beverages" are broad enough to cover "apple cider," *Jacob

Demmer* was an *ex parte* appeal where the Board took judicial notice of a dic-

tionary definition in affirming the examining attorney's refusal to register. In

*ex parte* appeals, the Board generally adopts a "more permissive stance with

respect to the admissibility and probative value of evidence" than it does in an

*inter partes* case. TBMP § 1208 (3rd ed. rev. 2 June 2013). Here, in this *inter

partes* proceeding, the burden is on opposer to introduce evidence that the

goods are related. Indeed, the Board made clear in both the *Jacob Demmer*

and *Rola* decisions that we cannot *per se* deem wines and non-alcoholic apple

juices or beverages as related goods; rather, we must examine the particular

factual circumstances of each case. *Jacob Demmer*, 219 USPQ at 1201; *Rola*,

223 USPQ at 58. We therefore look to the record to ascertain whether opposer

has shown by a preponderance of the evidence that the parties' goods are in-

deed related for likelihood of confusion purposes.

As evidentiary support that the goods in question are related, opposer

presented testimony that the parties are competitors in Canada with respect

to wine and ice wine (Applebaum Deposition, 13:21-24 and 20:15-22) and evi-

dence that opposer's parent company also wholly owns three other Canadian-

based companies engaged in the following: (1) Jackson-Triggs, the "number

one" selling wine brand in Canada which produces table wines, ice wines and

Case: 14-1269    Document: 1-2    Page: 19    Filed: 01/29/2014

Opposition No. 91178682

sparkling wines (Applebaum Deposition, 18:13-17; Ex. 6 – print outs from the Jackson-Triggs web site), (2) Inniskillin, the "number one brand Icewine in the world" (*Id*. at 19:2-11, Ex. 7 – print outs from the Inniskillin web site), and (3) Growers Cider, the number one cider and alcoholic cider produced and sold in Canada (*Id*. at 20:2-14, Ex. 8 – print outs from Growers Cider web site).

This evidence is insufficient to show that applicant's and opposer's identified goods are related in some manner or that the circumstances surrounding their marketing are such that they would be likely to be seen by the same persons under circumstances which could give rise to a mistaken belief that they originate from or are in some way associated with the same producer or that there is an association between the producers of each parties' goods. *See Recot,* 54 USPQ2d at 1898. "The probative value, if any, of foreign information sources must be evaluated on a case-by-case basis." *See In re Bayer Aktieng-esellschaft,* 488 F.3d 960, 82 USPQ2d 1828, 1835 (Fed. Cir. 2007) (in analyzing descriptiveness of applied-for mark ASPIRINA, information originating on foreign websites or in foreign news publications that are accessible to the United States public may be relevant to discern U.S. consumer impression of a proposed mark). The evidence obtained from the Jackson-Triggs, Inniskillin and Growers Cider web sites is, at best, of minimal probative value because it pertains to Canadian, not U.S., based entities, and we have no evidence before us regarding exposure to each web site by U.S. consumers. *See In re Kysela Pere et Fils Ltd.*, 98 USPQ2d at 1265 n.9 (no basis to conclude U.S. consumers

*- 16 -*

exposed to website for Australian brewery; those webpages not considered). Opposer's testimony provides no further clarification. When testifying as to each product marketed under the Jackson-Triggs, Inniskillin and Growers Cider trademarks, Mr. Applebaum was asked about the renown in Canada but not in the United States. *Id.* at 18-20:11.[10] Furthermore, the evidence does not show that any of these three entities markets and sells both applicant's and opposer's identified goods under the same brand name. The fact that a large corporate conglomerate may own separate holdings which in turn each use their own individual, distinct mark for the goods in question is not the equivalent of showing competitor or third-party use of the same mark on the same goods.

Opposer did not introduce evidence that the same entities produce and sell both wine and "[a]pple juices" or "apple-based non-alcoholic beverages," or that they market said products under the same mark in the United States. We have no evidence before us that wine and apple juice or "apple-based non-alcoholic beverages" are complementary products (for example, consumed together at the same meal) or that these products are sold in proximity to each other in retail outlets such as grocery stores. Thus, on the record before us, this *du Pont* factor does not favor a likelihood of confusion.

---

[10] Mr. Applebaum did testify that the Jackson-Triggs brand is sold in the United States but did not indicate as to what extent. Applebaum Deposition, 19:17-20.

6. *The Market Interface Between the Parties*

Opposer contends that the tenth *du Pont* factor, the market interface between applicant and opposer, favors a likelihood of confusion. Specifically, opposer points to applicant's use or intended use of its applied-for mark without opposer's consent or permission. Opposer's Brief, p. 16.

With regard to decisions discussing *du Pont* factor 10(a), a mere consent to register or use, and factor 10(b), agreement provisions designed to preclude confusion, i.e., limitations on continued use of the marks by each party, "[t]hese cases teach that a 'naked' consent to register or use is entitled to little probative weight in the likelihood of confusion analysis, but that if the applicant and the prior user have entered into an agreement which evidences their business-driven conclusion and belief that there is no likelihood of confusion, and which includes provisions designed to avoid any potential confusion, the existence of such an agreement weighs heavily in favor of a finding that confusion is not likely." *In re Opus One Inc.*, 60 USPQ2d 1812, 1820 (TTAB 2001) (internal citations omitted). Here we have neither a consent from opposer (as contemplated by *du Pont* factor 10(a)), nor an agreement between applicant and opposer (as contemplated by *du Pont* factor 10(b)). We cannot simply draw the inference that the absence of such an agreement favors a likelihood of confusion. We therefore deem this *du Pont* factor neutral.

Opposition No. 91178682

### 7.    *Balancing the du Pont Factors*

In a particular case, any of the *du Pont* factors may play a dominant role. *In re E. I. du Pont de Nemours & Co.*, 177 USPQ at 567. In fact, in some cases, a single factor may be dispositive. *Kellogg Co. v. Pack'em Enterprises Inc.*, 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991). In the present case, the lack of evidence showing a relatedness of the goods outweighs the first, third, and fourth *du Pont* factors which favor a finding of likelihood of confusion, discussed above. Accordingly, we find that opposer has failed to prove its case by a preponderance of the evidence.[11]

**Decision:** The opposition is dismissed.

---

[11] In view of the lack of evidence of use of applicant's applied-for mark, we agree with opposer that the seventh and eighth *du Pont* factors (nature and extent of any actual confusion; the length of time and conditions under which there has been concurrent use without evidence of actual confusion) are irrelevant.

Print postage online - Go to usps.com/postageonlin


UNITED STATES POSTAL SERVICE


PAID
RARITAN.NJ
08869
DEC 13. 13
AMOUNT
$22.50
000-46063-04

1007

**PLEASE PRESS FIRMLY**

**PLEASE PRE**

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE

RETURN RECEIPT REQUESTED

Flat Rate
Mailing Envelope
**For Domestic and International Use**

*Visit us at usps.com*

≡EMS

When used internationally
affix customs declarations
(PS Form 2976, or 2976A).

EU 980197555 US

RETURN RECEIPT REQUESTED

**ORIGIN (POSTAL SERVICE USE ONLY)**

| PO ZIP Code | Day of Delivery | Postage |
|---|---|---|
| 08869 | ☐Next ☐2nd ☐2nd Del. Day | $ 19.95 |
| Date Accepted | Scheduled Date of Delivery | Return Receipt Fee |
| 12-13-13 | Month 12 Day 14 | $ 2-55 |
| Time Accepted | Scheduled Time of Delivery | COD Fee | Insurance Fee |
| 5:00 ☐AM ☑PM | ☐Noon ☐3 PM | $ | $ |
| Flat Rate ☐ or Weight | Military ☐2nd Day ☐3rd Day | Total Postage & Fees $ 22-50 |
| lbs. 6 ozs. | Int'l Alpha Country Code | Acceptance Emp. Initials 186 |

**FROM:** (PLEASE PRINT)  PHONE ( 708 ) 722 5640

BAKER + RANNELLS PA
575 ROUTE 28  SUITE 102
RARITAN, N.J. 08869

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call 1-800-222-1811



**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

**Mailing Label**
Label 11-B, March 2004

**Post Office To Addressee**

**DELIVERY (POSTAL USE ONLY)**

| Delivery Attempt | Time | | Employee Signature |
|---|---|---|---|
| Mo. Day | | ☐PM | RECEIVED |
| Delivery Attempt | Time | ☐AM | Employee Signature |
| Mo. Day | | ☐PM | DEC 1 6 2013 |
| Delivery Date | Time | ☐AM | Employee Signature |
| Mo. Day | | ☐PM | USPTO MAIL CENTER |

**CUSTOMER USE ONLY**

PAYMENT BY ACCOUNT
Express Mail Corporate Acct. No.

Federal Agency Acct. No. or
Postal Service Acct. No.

☐ **WAIVER OF SIGNATURE** *(Domestic Mail Only)* Additional merchandise insurance is void if customer requests waiver of signature.
I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

☐ **NO DELIVERY**
☐Weekend ☐Holiday    Mailer Signature

**TO:** (PLEASE PRINT)  PHONE ( 908 ) 722 5640

DIRECTOR OF GENERAL COUNSEL
OFFICE OF GENERAL COUNSEL
United States Patent + Trademark Office
P.O. Box 1450
Alexandria, VIRGINIA 22313-1450

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)



FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.


OFFICE OF THE GENERAL COUNSEL
US PATENT AND TRADEMARK OFFICE
2013 DEC 16 PM 4: 07
RETURN RECEIPT REQUESTED


**USPS packaging products have been awarded Cradle to Cradle Certification™** for their ecologically-intelligent design. For more information go to mbdc.com/usps

Cradle to Cradle Certified™ is a certification mark of MBDC.

*Please recycle.*

EP13F

Form PTO 55 (12-80)

# U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

January 28, 2014

(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the content entries in the file of the trademark opposition proceeding and the involved application identified below. The list was taken from the TSDR and TTABvue electronic databases of this Office and comprise the record before the United States Patent and Trademark Office.

**Franciscan Vineyards, Inc. v. Domaines Pinnacle, Inc.**

**Opposition No. 91178682**

**(Application No. 78/783,236)**

By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Certifying Officer*

**PROSECUTION HISTORY – OPPOSITION NO. 91178682**
**(Serial No. 78/783,236)**

| DATE | DESCRIPTION |
|---|---|
| 12/30/2005 | APPLICATION |
| 12/30/2005 | DRAWING |
| 06/23/2006 | XSEARCH SEARCH SUMMARY |
| 06/23/2006 | NON-FINAL OFFICE ACTION |
| 06/23/2006 | NOTATION TO FILE |
| 12/22/2006 | RESPONSE TO NON-FINAL OFFICE ACTION |
| 02/17/2007 | PUBLICATION & ISSUE REVIEW COMPLETE |
| 03/14/2007 | NOTICE OF PUBLICATION |
| 08/01/2007 | NOTICE OF OPPOSITION |
| 08/01/2007 | NOTICE AND TRIAL DATES SENT; ANSWER DUE |
| 08/01/2007 | OPPOSITION PENDING; INSTITUTED |
| 09/10/2007 | ANSWER |
| 09/14/2007 | COPY OF ANSWER FORWARDED TO OPPOSER |
| 09/19/2007 | CORRECTION TO BOARD ORDER |
| 02/11/2008 | D'S MOTION FOR SUSPENSION FOR SETTLEMENT NEGOTIATIONS WITH CONSENT |
| 02/11/2008 | MOTION TO SUSPEND GRANTED |
| 09/24/2008 | P'S MOTION TO AMEND NOTICE OF OPPOSITION |
| 10/14/2008 | D'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES |
| 10/24/2008 | P'S MOTION TO STRIKE AFFIRMATIVE DEFENSES FROM D'S AMENDED ANSWER TO THE AMENDED NOTICE OF OPPOSITION |
| 10/24/2008 | P'S CORRECTED MOTION TO STRIKE AFFIRMATIVE DEFENSES FROM D'S AMENDED ANSWER TO THE AMENDED NOTICE OF OPPOSITION |
| 11/15/2008 | PROCEEDINGS SUSPENDED PENDING DISPOSITION OF OUTSTANDING MOTION |
| 01/13/2009 | MOTION TO STRIKE DENIED; TRIAL DATES RESET |
| 01/20/2009 | P'S REQUEST FOR RECONSIDERATION OF BOARD'S ORDER DENYING MOTION TO STRIKE AFFIRMATIVE DEFENSES OF APPLICANT |
| 01/22/2009 | P'S MOTION TO COMPEL DISCOVERY WITHOUT OBJECTIONS |
| 02/02/2009 | PROCEEDINGS SUSPENDED PENDING DISPOSITION OF OUTSTANDING MOTION |

| 02/12/2009 | PROCEEDINGS RESUMED |
|---|---|
| 03/05/2009 | P'S MOTION TO EXTEND DISCOVERY 60 DAYS |
| 03/27/2009 | EXTENSION OF TIME GRANTED |
| 04/20/2009 | D'S MOTION TO WITHDRAW AS COUNSEL |
| 05/18/2009 | BD. ORDER DENYING WITHOUT PREJUDICE D'S MOTION TO WITHDRAW |
| 05/26/2009 | D'S MOTION TO WITHDRAW AS COUNSEL |
| 06/09/2009 | RESPONSE DUE 30 DAYS |
| 07/13/2009 | P'S REQUEST FOR ENTRY OF DEFAULT |
| 07/14/2009 | D'S RESPONSE TO BOARD ORDER INQUIRY |
| 07/20/2009 | D'S RESPONSE TO BOARD ORDER INQUIRY (COPY OF 7/14/2009 RESPONSE) |
| 09/17/2009 | TRIAL DATES RESET |
| 12/28/2009 | P'S MOTION ON CONSENT TO SUSPEND PROCEEDINGS FOR PURPOSES OF SETTLEMENT NEGOTIATIONS |
| 01/05/2010 | PROCEEDINGS SUSPENDED |
| 04/04/2011 | RESPONSE DUE 30 DAYS |
| 05/04/2011 | P'S MOTION ON CONSENT TO REOPEN AND RESET TRIAL DATES AND TO SUSPEND FOR PURPOSES OF SETTLEMENT DISCUSSIONS |
| 05/10/2011 | TRIAL DATES RESET |
| 09/06/2011 | P'S MOTION TO SUSPEND FOR PURPOSES OF SETTLEMENT DISCUSSIONS |
| 09/07/2011 | PROCEEDINGS SUSPENDED |
| 09/08/2011 | P'S COMMUNICATION WITH BOARD CONCERNING P'S MOTION TO SUSPEND FOR PURPOSES OF SETTLEMENT DISCUSSIONS |
| 12/21/2011 | P'S MOTION FOR SUSPENSION FOR SETTLEMENT WITH CONSENT |
| 12/29/2011 | PROCEEDINGS SUSPENDED |
| 05/07/2012 | P'S NOTICE OF TAKING TESTIMONY PURSUANT TO 37 CFR SECTION 2.123 OF JON GUGGINO |
| 05/14/2012 | P'S 1ST NOTICE OF RELIANCE (PURSUANT TO 37 CFR §2.122(d)(2)) |
| 05/17/2012 | P'S MOTION FOR SUSPENSION FOR SETTLEMENT WITH CONSENT |
| 05/22/2012 | PROCEEDINGS SUSPENDED |
| 09/12/2012 | P'S NOTICE OF TAKING TESTIMONY PURSUANT TO 37 CFR SECTION 2.123 OF JUAN FONSECA |
| 09/09/2012 | P'S NOTICE OF TAKING TESTIMONY PURSUANT TO 37 CFR SECTION 2.123 OF ALEX PARRA |
| 09/28/2012 | P'S AMENDED NOTICE OF TAKING TESTIMONY PURSUANT TO 37 |

| | CFR SECTION 2.123 OF JUAN FONSECA |
|---|---|
| 09/28/2012 | P'S AMENDED NOTICE OF TAKING TESTIMONY PURSUANT TO 37 CFR SECTION 2.123 OF ALEX PARRA |
| 10/02/2012 | P'S 2ND NOTICE OF RELIANCE PURSUANT TO 37 CFR §2.122(e) |
| 10/02/2012 | P'S 3RD NOTICE OF RELIANCE |
| 10/03/2012 | P'S MOTION TO EXTEND P'S TESTIMONY PERIOD AND ALL SUBSEQUENT DATES |
| 10/09/2012 | EXTENSION OF TIME GRANTED |
| 10/26/2012 | P'S AMENDED NOTICE OF TAKING TESTIMONY PURSUANT TO 37 CFR SECTION 2.123 OF LOU APPLEBAUM |
| 10/26/2012 | P'S AMENDED NOTICE OF TAKING TESTIMONY PURSUANT TO 37 CFR SECTION 2.123 OF JUAN FONSECA |
| 10/26/2012 | P'S AMENDED NOTICE OF TAKING TESTIMONY PURSUANT TO 37 CFR SECTION 2.123 OF ALEX PARRA |
| 11/06/2012 | P'S MOTION TO EXTEND P'S TESTIMONY PERIOD AND ALL SUBSEQUENT DATES |
| 11/29/2012 | P'S AMENDED NOTICE OF TAKING TESTIMONY PURSUANT TO 37 CFR SECTION 2.123 OF LOU APPLEBAUM, RONALD FONDILLER, CHARLES CRAWFORD |
| 12/10/2012 | P'S COMBINED NOTICE OF FILING OF TESTIMONY TRANSCRIPT AND EXHIBITS AND NOTICE OF SERVICE OF TRANSCRIPTS AND EXHIBITS (EXHIBITS 1-4) |
| 12/10/2012 | P'S COMBINED NOTICE OF FILING OF TESTIMONY TRANSCRIPT AND EXHIBITS AND NOTICE OF SERVICE OF TRANSCRIPTS AND EXHIBITS (EXHIBITS 5-8) |
| 12/14/2012 | P'S 4TH NOTICE OF RELIANCE PURSUANT TO 37 CFR §2.122(e) |
| 01/14/2013 | EXTENSION OF TIME GRANTED |
| 01/22/2013 | P'S COMBINED NOTICE OF FILING TESTIMONY TRANSCRIPT AND EXHIBITS AND NOTICE OF SERVICE OF TRANSCRIPTS AND EXHIBITS |
| 06/26/2013 | P'S FINAL BRIEF: TM RULE 2.128 |
| 08/20/2013 | SUBMITTED ON BRIEF |
| 10/16/2013 | BOARD DECISION: DISMISSED |
| 12/16/2013 | APPEAL TO CAFC |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing NOTICE FORWARDING CERTIFIED LIST has been served on counsel for the Appellant and the Appellee this 28th day of January, 2014 as follows:

John M. Rannells
Baker and Rannells, P.A.
575 Route 28, Suite 102
Raritan, NJ 08869
*Attorneys for Appellant*

Charles Crawford
Domaines Pinnacle, Inc.
150 Chemin Richford
Frelighsburg, QC J0J 1C0 Canada

By: *Macia L. Fletcher*
**Macia L. Fletcher**
Paralegal Specialist

RECEIPT FOR PAYMENT

# United States Court of Appeals
# For The Federal Circuit

OFFICE OF THE CLERK

Received From _Busey and Runnells_
(NAME)

_____
(ADDRESS)

_12 13 13_
(DATE)

## NON-APPROPRIATED ACCOUNT

| | AMOUNT |
|---|---|
| Admission Fee | 300 00 |
| | |
| | |
| Duplicate Cert. of Admission | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL** | 300 00 |

Clerk ☐

Deputy Clerk ☐

☐            Cash ☐   Check ☐   MONEY ORDER ☐

Standard Register ®