**14-1269**

In The

# United States Court of Appeals

### For The Federal Circuit

## FRANCISCAN VINEYARDS, INC.,

*Appellant,*

v.

## DOMAINES PINNACLE, INC.,

*Appellee.*

### APPEAL FROM THE UNITED STATES
### PATENT AND TRADEMARK OFFICE IN CASE NO. 91178682.

———————————

### COMBINED PETITION FOR PANEL REHEARING AND
### REHEARING EN BANC

———————————

John M. Rannells
BAKER AND RANNELLS, PA
575 Route 28, Suite 012
Raritan, New Jersey 08869
(908) 722-5640
jmr@br-tmlaw.com

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

I.  STATEMENT OF COUNSEL PURSUANT TO FEDERAL
    CIRCUIT RULE 35(b)...................................................1

II. POINTS OF LAW OR FACT MISAPPREHENDED BY THE
    PANEL OF THE COURT...............................................2

III. ARGUMENT IN SUPPORT OF REHEARING EN BANC OR,
     IN THE ALTERNATIVE, PANEL REHEARING....................3

     A.  INTRODUCTION................................................3

     B. BACKGROUND...................................................3

     C. Section 1208 Should Not Have Been Applied in Light of the
        Obviousness and Relatedness of the Goods and this Court's
        Predecessor's Precedent set in *Pink Lady*......................4

         I.    The Goods are Plainly Related without a Dictionary
               Definition...............................................4

         II.   The Dictionary Definition for the Terms "Wine" and "Cider"
               Clearly Show the Relatedness of the Goods..................6

         III.  This Court Misapprehends Appellant's Argument Concerning *In re
               Jakob Demmer KG*........................................10

     D. The "More Permissive" Language in TBMP §1208 is Inapplicable......11

IV. CONCLUSION....................................................13

# TABLE OF AUTHORITIES

Page(s)

## CASES

*B.V.D. Licensing Corp. v. Body Action Design Inc.*
6 U.S.P.Q. 2d 1719 (Fed. Cir. 1988)................................. 1,

*Cosmair, Inc. v. Jean Alexander Cosmetics, Inc.,*
2001 TTAB LEXIS 805 at *19 (T.T.A.B. 2001)................... 6

*CTS Corp. v. Cronstroms Manufacturing, Inc.,*
185 U.S.P.Q. 773 (CCPA 1975)...................................... 5

*Electronic Design & Sales Inc. v. Electronic Data Systems Corp.*
21 U.S.P.Q. 2d 1388 (Fed. Cir. 1992)............................... 6

*Hewlett-Packard Co. v. Packard Press, Inc.*
62 U.S.P.Q. 2d 1001, 281 F.3d 1261 (Fed. Cir. 2002)............ 8

*In re Jakob Demmer KG,*
219 U.S.P.Q. 1199 (TTAB 1983).................................. 2,4,6,7,10

*Monroe Cider Vinegar & Fruit Co., v. Riordan,*
280 F.624 (2nd Cir. 1922)................................................ 6

*Octocom Systems, Inc. v. Houston Computers Services, Inc.*
16 U.S.P.Q. 2d 1783 (Fed. Cir. 1990)............................... 5

*Pink Lady Corporation v. L. N. Renault & Sons, Inc.,*
265 F.2d 951, 121 USPQ 465 (CCPA 1959)
rev'g 115 USPQ 292................................................. 1,2,9

*Schenley Industries, Inc. v. Fournier, Inc.,*
357 F2d 395, 149 USPQ 60 (C.C.P.A. 1966)....................... 10

*W.H. Brady Co. v. IT&T,*
1982 TTAB LEXIS 122 at *7 (T.T.A.B. 1982).................... 5

**Page(s)**

**RULE**

Fed. R. Evid. 201(b)…………………………………………………….... 1,7,8

Fed. R. Evid. 201(c)(2)………………………………………………….. 1,8

TBMP Section 1208………………………………………………….. 1,11

TBMP Section 703.01(b)………………………………………….. 12

## I.    STATEMENT OF COUNSEL UNDER FEDERAL CIRCUIT RULE 35(b)

Based upon my professional judgment, I believe that the Panel decision is contrary to the precedents of this Court: *Pink Lady Corporation v. L. N. Renault & Sons, Inc.*, 265 F.2d 951, 121 USPQ 465 (C.C.P.A. 1959), *rev'g* 115 USPQ 292; *The B.V.D. Licensing Corp. v. Body Action Design Inc.*, 6 USPQ2d 1719 (Fed. Cir. 1988) and associated Federal Rules of Evidence 201(b) and (c)(2).

Based upon my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

(1)    Whether the Federal Circuit is going to depart from longstanding precedent concerning the relatedness of "wine" and non-alcoholic beverages, namely, "fruit juices"; and

(2)    Whether Section 1208 of the Trademark Trial and Appeal Board Manual of Procedure ("TBMP") concerning the "more permissive" evidentiary standard applies beyond technical evidentiary requirements and/or leniency for Examining Attorneys in amassing and presenting evidence—especially in dealing or dispensing with the obviousness of relation between goods.

Dated: January 8, 2015          /s/   John M. Rannells
                                John M. Rannells
                                Baker and Rannells, PA
                                Attorney of Record for Plaintiff-Appellant

1

## II.   POINTS OF LAW OR FACT OVERLOOKED OR MISAPPREHENDED BY THE PANEL OF THE COURT

In addition to departing from identified precedent, the Panel overlooked or misapprehended the following issues of law or fact:

1.    The Board's application of Section 1208 to the present case erroneously strips the relevant cases, *Pink Lady Corporation v. L. N. Renault & Sons, Inc.*, 265 F.2d 951, 121 U.S.P.Q. 465 (C.C.P.A. 1959), *rev'g,* 115 U.S.P.Q. 292 and *In re Jakob Demmer KG*, 219 U.S.P.Q. 1199 (T.T.A.B. 1983) of their precedential value and status and creates an evidentiary burden not required by precedent.

2.    The description of the goods for purposes of relatedness were obvious and the Court failed to accept the dictionary definitions provided by Appellant pursuant to Fed. R. Evid. 201.

3.    This Court ignored the Board's own findings that "the trade channels for opposer's and applicant's goods overlap in part. In addition, both parties' goods will be encountered by the same prospective consumers" and failed to apply the findings to the issue of relatedness of or viable relationship of the parties respective goods.

4.    The "more permissive" language applicable to *ex parte* TTAB cases set forth in Section 1208 of the TBMP pertains to exceptions to (1) "technical

requirements" and (2) leniency for Examining Attorneys, neither of which apply to the present case.

### III.  ARGUMENT IN SUPPORT OF REHEARING EN BANC OR, IN THE ALTERNATIVE, PANEL REHEARING

### A.  INTRODUCTION

This combined petition for rehearing *en banc* or, in the alternative, for panel rehearing is in order because "wine" and "cider" (*e.g.*, a fruit juice) are obviously related.  Moreover, this Court's interpretation of the evidentiary burden is incorrect as it pertains to the second *DuPont* factor.  This conclusion is borne out by binding precedent of this Court, relevant dictionary definitions which should have been accepted pursuant to Fed. R. Evid. 201.

### B.  BACKGROUND

The goods of the parties are clearly related.  Appellee, Domaines Pinnacle, Inc. ("Appellee" or "DPI") applied for DOMAINE PINNACLE (and Design) ("DPI's Mark") to cover "apple juices and apple-based non-alcoholic beverages" ("DPI's Goods") in International Class 032.  FVI owns PINNACLES (U.S. Reg. No.  0997378)  and  PINNACLES  RANCHES  (U.S.  Reg.  No. 4072330)(collectively, "FVI's Marks") in International Class 033 for "wine" (FVI's Goods").

The Board, in evaluating the *DuPont* factors, found that "PINNACLE [is] the dominant element in [DPI's Mark]...the involved marks are highly similar in

sound and appearance...[and] the significance of the term PINNACLE or PINNACLES is highly similar." [A8-A9]. Moreover, if found that the channels of trade are similar and that the classes of consumer weighed in favor of confusion. [A13]. With the exception of the second *DuPont* factor all other factors were found to be neutral or irrelevant.

### C.   Section 1208 Should Not Have Been Applied in Light of The Obviousness and Relatedness of the Goods and this Court's Predecessor's Precedent set in *Pink Lady*

The goods are so plainly related so as to be obvious. Dictionary definitions of the sort that whose accuracy cannot be disputed and, as such, are the most common source material for judicial notice under Fed. R. Evid. 201. FVI requested that this Court take judicial notice of the dictionary definitions for "cider" and "wine" that would have made the relatedness of the goods obvious. This Court did not take judicial notice of the dictionary definitions for "cider" and "wine" because that was the "more permissive stance" allowed in *In re Jakob Demmer KG*, 219 U.S.P.Q. 11999 (T.T.A.B. 1983), an *ex parte* appeal.[1] However, if FVI is not allowed to use a dictionary definition to educate how the consumer would view the goods, how can it demonstrate the obvious relatedness?

### I.   The Goods are Plainly Related without a Dictionary Definition

---

[1]   The Board was not asked to take judicial notice of the dictionary definitions of the terms "cider" and "wine." Rather, judicial notice was requested for the first time at this stage of the proceeding—which is permissible under Fed. R. Evid. 201(d).

It is well settled in comparing the goods of the parties, the trier of fact must look to the descriptions of the goods in the opposer's registrations and in the involved application. *See, e.g. Octocom Systems, Inc. v. Houston Computers Services Inc.*, 16 U.S.P.Q. 2d 1783, 1787 (Fed. Cir. 1990)("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed."); *see also, CTS Corp. v. Cronstroms Manufacturing, Inc.*, 185 U.S.P.Q. 773 (CCPA 1975).

It has been oft-said that where the "commercial relatedness of the good[s] of the parties is not obvious, it is incumbent upon the oppose to show that the goods of the parties are related or that conditions surrounding their marketing are such that they would likely be encountered by the same persons under circumstances that could give rise, because of the similarities of the marks, to the mistaken belief that they are associated with the same source." *See, e.g.*, *W.H. Brady Co. v. IT&T*, 1982 TTAB LEXIS 122 at *7 (T.T.A.B. 1982)(citing cases). The opposite, however, ought be true as obvious: namely, that where the goods are so plainly related to one another, the obvious need not be overly accentuated. For this

reason, Appellant relied upon the obvious holding in *In re Jakob Demmer KG*, 219
U.S.P.Q. 11999 (T.T.A.B. 1983).

**II.    The Dictionary Definition for the Terms "Wine" and "Cider"**
**Clearly Shows the Relatedness of the Goods**

As is oft-stated, "[t]he Trademark Act does not speak in terms of remote
possibilities of confusion, but rather, the likelihood of confusion in the
marketplace." *See, e.g., Cosmair, Inc. v. Jean Alexander Cosmetics, Inc.*, 2001
TTAB LEXIS 805 at *19 (T.T.A.B. 2001) (quoting *Electronic Design & Sales Inc.*
*v. Electronic Data Systems Corp.*, 21 U.S.P.Q. 2d 1388, 1391 (Fed. Cir. 1992)).
The marketplace does not concern itself with abstract definitions.    Toward that
end, in *Monroe Cider Vinegar & Fruit Co. v. Riordan*, 280 F.624 (2d Cir. 1922),
the Second Circuit Court of Appeals discussed the classification of "cider"—both
sweet (non-alcoholic) and hard (alcoholic).    FVI's Goods—when you look at them
closely—encompass both hard and sweet cider because the goods disclose "apple
juices."    Specifically, the *Monroe Cider Vinegar* case noted that "the position of
'cider' [was] in common knowledge and in the English language":

> "'Cider' originally meant strong drink, and was known to the
> ancients, as a most cursory examination of the encyclopaedias will
> disclose.  […]  It has a familiar place in literature; for Bacon refers it
> to 'a kind of cider made of a fruit of that country,' and Audley Court
> Tennyson speaks of 'a flask of cider from his father's vats.'"
>
> **'The terms 'sweet cider' and 'hard cider' are in popular use**
> **to distinguish between the *juice of the apple* before and after**
> **fermentation.'"**

6

*Id.* at 628 (quotation omitted))(emphases added). Both alcoholic and non-alcoholic "cider" fit within the definition of "apple juice" as included in DPI's Goods. The Board found that DPI's Goods were broad enough to encompass "cider." [A15]. Appellant should not have needed to amass an armory of evidence to overcome the obvious—notwithstanding that this was the "approach" allowed in the *ex parte* decision approved by the Board in *In re Jakob Demmer*. Wine and cider/apple juice both come from fruit—the fruit of the grape and apple, respectively. Both are goods that consumers imbibe, that consumers use to slake their thirst.

For avoidance of doubt, however, Appellant requested that this Court take judicial notice of the dictionary definitions for "cider" and "wine" in its appeal.[2] These definitions point out the obvious—namely—that cider/apple juice and wine are related goods. As can be seen from these definitions, one can have an "apple juice" wine since a wine also includes "[t]he fermented juice of any of various other fruits[.]" Fed. R. Evid. 201(b) provides, in relevant part:

---

[2]    Specifically, Appellant requested that this Court take judicial notice of the term "Cider" as being "the juice pressed from fruits, esp. apples, and used for making vinegar or as a fermented or unfermented beverage." *See* FVI's Appellate Brief at 21. It also requested that this Court take judicial notice of "wine" as "the fermented juice of any of various kinds of grapes" and "[t]he fermented juice of any of various other fruits or plants." To accentuate the obvious, the Alcohol and Tobacco Tax and Trade Bureau ("TTB") defines "Hard Cider" as a "still wine derived primarily from apples." In other words, cider is wine and wine is cider.

"The court may judicially notice a fact that is not subject to reasonable dispute because it:

"(1) is generally known within the trial court's territorial jurisdiction; or

"(2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."

*See* Fed. R. Evid. 201(b).

Moreover, as noted by Appellant in its Appellate Brief, this Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* FVI's Appellate Brief at 20 (quoting Fed. R. Evid. 201(c). The Board evaluated the *DuPont* factors and found that the first, third and fourth factors favored a likelihood of confusion. Together with the dictionary definitions that this Court had—the sum of all factors should have tipped in favor of FVI. This is all the more true in light of the fact that this Court "resolves doubts about the likelihood of confusion against the newcomer because the newcomer has the opportunity and obligation to avoid confusion with existing marks." *Hewlett-Packard Co. v. Packard Press, Inc.*, 62 U.S.P.Q. 2d 1001, 281 F.3d 1261, 1265 (Fed. Cir. 2002). Beyond that, here, Appellant provided evidence to the Board and this Court regarding Appellee's first attempt to register the DOMAINE

8

PINNACLE mark. That "first crack at the apple" in both Classes 032 and 033 was refused on the basis of FVI's Marks.

Beyond the above, the United States Court of Customs and Patent Appeals decision in *Pink Lady Corp. v. L.N. Renault & Sons, Inc.*, 46 C.C.P.A. 865 (C.C.P.A. 1959)—which involved an *inter partes* opposition with identical goods to those at issue here in (*e.g.*, wines and fruit juices)—held that the burden on the oppose of proving the relatedness of the goods "does not necessarily require the submission of evidence other than the registration." *Id.* at 866. In that case, the Assistant Commissioner took the same position that the Board took below—e.g., that there was "nothing in the record which suggests that purchasers would be likely to associate wines with citrus fruits or juices, or to assume that such products marked 'PINK LADY' came from the same producer." *Id.* In overruling the Assistant Commissioner, the CCPA held:

> "It does not seem unreasonable to assume that citrus fruit juices and wines are likely to be sold in the same stores over the same counters to the same prospective purchasers."

*Id.* at 867. Considering the above, the CCPA held further that "[t]here can be no doubt, if opposer's and applicant's products are sold in the same stores, that purchaser confusion is likely, and section 2 of the Trade Mark Act of 1946 states that no trademark should be registered if it is "likely, when applied to the goods of

the applicant, to cause confusion or mistake or to deceive purchasers[.]" *Id.* Here, the Board ruled that parties' trade channels overlap in part and that the parties' goods will be encountered by the same prospective consumers. [A13]. Beyond that in *Schenley Industries, Inc. v. Fournier, Inc.*, 149 U.S.P.Q. 60 (C.C.P.A. 1966), the goods at issue were whiskey and processed fruits. That case is analogous to the instant one because a stipulation between the parties found what the Board has already decided here, namely, that the channels of trade overlap. This was sufficient for a finding of relatedness of the goods and, in turn, likelihood of confusion.

### III.   This Court Misapprehends Appellant's Argument concerning *In re Jakob Demmer KG*

The Court misapprehends Appellant's argument concerning *In re Jakob Demmer KG*, 219 USPQ 1199 (T.T.A.B. 1983) and the precedent it stands for. The Court states at p. 4 of its decision that "Franciscan also argues the Board failed to follow *In re Jakob Demmer KG*, 219 USPQ 1199 (TTAB 1983) to generally deem wines and non-alcoholic beverages related goods." As pointed out by Appellant on pp 14, and 18-21 of its principal brief, the *per se* rule set forth in *Jakob Demmer* refers to wine and non-alcoholic beverages <u>in general</u>. Appellant did not argue for a *per se rule* concerning non-alcoholic beverages <u>in general</u> as asserted by the Board and this Court. Appellant argued that the Board in *Jakob Demmer*, while stating there is no per se rule concerning non-alcoholic beverages

in general, ruled that as regards "wine" and "apple cider" likelihood of confusion "is clear" "because cider is a beverage which can be produced and marketed in alcoholic as well as non-alcoholic form." Their decision was bolstered by taking judicial notice of the dictionary definitions of "cider" and "wine" as well as their finding of similarities in trade channels and consumers.

This Court agreed with the Board that the evidence is "insufficient to show that the goods at issue...were related or that they would likely be seen by the same persons under circumstances that could give rise to confusion." Dec. p. 3. This Court, in affirming the same, ignores the Board's own findings that "the trade channels for opposer's and applicant's goods overlap in part. In addition, both parties' goods will be encountered by the same prospective consumers." Board Dec. p. 13. Clearly, the fact that the goods overlap and would be encountered by the same prospective consumers means that the goods "would likely be seen by the same persons under circumstances that could give rise to confusion."

### D.    The "More Permissive" Language TBMP §1208 is Inapplicable

Section 1208 of the TBMP concerns treatment of evidence (see attached copy of section). The Board generally takes a somewhat more permissive stance with respect to the admissibility and probative value of evidence in an ex parte proceeding than it does in an inter partes proceeding. That is, in an *ex parte*

proceeding the Board tolerates some relaxation of the **technical requirements** for evidence and focuses instead on the spirit and essence of the rules of evidence. The reason for this more relaxed approach in *ex parte* cases is that there is no cross-examination of witnesses or any compelling need for the strict safeguards required in an *inter partes* proceeding.   For example, the Board is somewhat more lenient in its approach in the consideration of surveys in ex parte proceedings than inter partes proceedings. Also, the affidavit or declaration is an established method for the introduction of evidence in an ex parte proceeding.   In an inter partes proceeding, however, evidence may not be offered in affidavit or declaration form except by agreement of the parties.   *See* TBMP §703.01(b).

The "more permissive" language of the TBMP has been consistently applied (1) to relaxation of "technical requirements" and (2) to leniency as regards Trademark Examining Attorney's submissions due to limited resources that constrain the examiner's ability to acquire evidence.   As regards "technical requirements" the TBMP section refers to, for example use of affidavits in lieu of testimony or representations of counsel in lieu of affidavits, or submission of NEXIS evidence, despite its hearsay nature in the case.   There is nothing in the stated section that precludes the Board or this Court from taking judicial notice of dictionary definitions.   There is nothing in the section that would preclude Appellant from relying upon *In re Jakob Demmer* as precedent, especially given it

reliance upon and appellate progeny, namely, the CCPA's decision in *Pink Lady*.

Appellant is not asking for a "technical relaxation" of the rules of evidence.

## IV.    CONCLUSION

For the foregoing reasons, FVI respectfully requests that the Court grant its

petition for rehearing *en banc* or panel rehearing and reverse the Panel's

affirmance of no likelihood of confusion based on cider and wine not being related

for purposes of the second *DuPont* factor.

Dated: January 8, 2015          /s/   John M. Rannells
                                John M. Rannells
                                Baker and Rannells, PA
                                575 Route 28, Suite 102
                                Raritan, New Jersey 08869
                                (908) 722-5640
                                Attorney of Record for Plaintiff-Appellant

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 8th day of January, 2015, I caused this Petition for Rehearing and Rehearing En Banc to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Charles Crawford
DOMAINE PINNACLE, INC.
105 Chemin Richford Road
Frelighsburg, Quebec JOJ 1 CO, Canada

*Pro Se Appellee*

I further certify that the required number of copies will be will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules and a copy will be served, via First Class U.S. Mail, upon Pro Se Appellee at the address above.

/s/ John M. Rannells
*Counsel for Appellant*

# ADDENDUM

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**IN RE FRANCISCAN VINEYARDS, INC.**

_____

2014-1269

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Opposition No. 91178682.

_____

Decided: December 9, 2014

_____

JOHN M. RANNELLS, Baker and Rannells, PA, of Raritan, New Jersey, for appellant.

_____

Before LOURIE, CHEN, and HUGHES, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Franciscan Vineyards, Inc. ("Franciscan") appeals from the decision of the United States Patent and Trademark Office ("PTO") Trademark Trial and Appeal Board (the "Board") dismissing its opposition to an application filed by Domaines Pinnacle, Inc. ("Domaines Pinnacle") to register a DOMAINE PINNACLE mark. *See Franciscan Vineyards, Inc. v. Domaines Pinnacle, Inc.*, No. 91178682, 2013 WL 5820844 (T.T.A.B. Oct. 16, 2013) ("*Opinion*"). Because the Board did not err in determining that Fran-

ciscan failed to prove a likelihood of confusion between
Franciscan's registered marks for use with wines and
Domaines Pinnacle's requested mark for use with "apple
juices and apple-based non-alcoholic beverages," we
*affirm*.

BACKGROUND

Domaines Pinnacle, a Canadian corporation and pro-
ducer of alcoholic ice apple wines, filed an intent-to-use
application at the PTO, seeking to register a DOMAINE
PINNACLE mark for "apple juices and apple-based non-
alcoholic beverages." *Opinion* at *1. Franciscan opposed
the registration, alleging that Domaines Pinnacle's mark
would likely cause confusion with Franciscan's previously
registered and used marks PINNACLES for "wine" and
PINNACLES RANCHES for "wines." *Id.*

The Board evaluated the following *DuPont* factors:
(1) the similarity or dissimilarity of the marks in their
entireties ("the first *DuPont* factor"); (2) the similarity or
dissimilarity and nature of the goods or services as de-
scribed in an application or registration or in connection
with which a prior mark is in use ("the second *DuPont*
factor"); (3) the similarity or dissimilarity of established,
likely-to-continue trade channels ("the third *DuPont*
factor"); (4) the conditions under which and the buyers to
whom sales are made ("the fourth *DuPont* factor"); (5) the
fame of the prior mark ("the fifth *DuPont* factor"); (6) the
number and nature of similar marks in use on similar
goods ("the sixth *DuPont* factor"); and (7) the market
interface between the applicant and the owner of a prior
mark ("the tenth *DuPont* factor"). *Id.* at *3–8; *see also In
re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361
(CCPA 1973) (listing factors relevant to likelihood of
confusion determination).

The Board found that the first, third, and fourth
*DuPont* factors favored a finding of likelihood of confu-
sion, *Opinion* at *3–4, *6, but that the fifth, sixth, and

IN RE FRANCISCAN VINEYARDS, INC.                                   3

tenth *DuPont* factors were neutral, *id.* at *4–5, *8. The Board, moreover, found that the second *DuPont* factor favored a finding of *no* likelihood of confusion. *Id.* at *6–8. Franciscan submitted evidence that the parties were competitors in Canada and that Franciscan's parent company wholly owned three Canadian companies that sold wines and ciders. But the Board found Franciscan's evidence insufficient to show that the goods at issue, *i.e.*, Franciscan's wines and Domaines Pinnacle's "apple juices and apple-based non-alcoholic beverages," were related or that they would likely be seen by the same persons under circumstances that could give rise to confusion. *Id.* at *7.

Balancing the relevant *DuPont* factors, the Board reasoned that "the lack of evidence showing a relatedness of the goods outweigh[ed] the first, third, and fourth [*DuPont*] factors." *Id.* at *8. The Board therefore concluded that Franciscan failed to prove its case and dismissed the opposition. *Id.* at *8–9.

Franciscan appealed to this court; we have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

We review the Board's legal conclusions without deference and its factual findings for substantial evidence. *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003). Likelihood of confusion is a question of law based on underlying findings of fact. *In re Chatam Int'l, Inc.*, 380 F.3d 1340, 1342 (Fed. Cir. 2004). We assess a likelihood of confusion based on the factors set forth in *DuPont*. 476 F.2d at 1361. "The likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus . . . on dispositive factors, such as similarity of the marks and relatedness of the goods.'" *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164–65 (Fed. Cir. 2002) (quoting *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1336 (Fed. Cir. 2001)).

4                              IN RE FRANCISCAN VINEYARDS, INC.

Franciscan argues that the Board overlooked evidence relating to the second *DuPont* factor, namely that Franciscan's wines and Domaines Pinnacle's "apple juices and apple-based non-alcoholic beverages" were related goods. According to Franciscan, when evaluating the second *DuPont* factor, the Board failed to take into account its own findings regarding the third and fourth *DuPont* factors. Franciscan also argues that the Board failed to follow *In re Jakob Demmer KG*, 219 U.S.P.Q. 1199 (T.T.A.B. 1983) to generally deem wines and non-alcoholic beverages related goods. Franciscan faults the Board for not taking judicial notice of the dictionary definitions of "wine" and "cider," and urges this court to take such judicial notice. Finally, Franciscan asserts that the Board incorrectly evaluated the fifth *DuPont* factor concerning the fame of its registered marks.

We conclude that the Board did not err in determining that there was no likelihood of confusion between Franciscan's previously registered marks for use with wines and Domaines Pinnacle's requested mark for use with "apple juices and apple-based non-alcoholic beverages" because Franciscan failed to present evidence to show that the goods at issue were related.

Franciscan presented testimony to the Board that the parties were competitors in Canada and that Franciscan's parent company owned three Canadian companies that sold wines and ciders. The Board correctly noted, however, that this evidence pertains to Canadian entities and is insufficient "to show that [Domaines Pinnacle's] and [Franciscan's] identified goods are related in some manner" or that the goods are marketed such that "they would be likely to be seen by the same persons under circumstances which could give rise to a mistaken belief that they originate from or are in some way associated with the same producer or that there is an association between the producers of each parties' goods." *Opinion* at *7.

IN RE FRANCISCAN VINEYARDS, INC.        5

Moreover, we agree with the Board that *Jacob Demmer* does not control in this case. *Id.* at *6. In *Jacob Demmer*, the Board affirmed the examining attorney's refusal to register similar marks for "wines" and "apple cider." *Jacob Demmer*, 219 U.S.P.Q. at 1200. In doing so, the Board took judicial notice of the dictionary definitions of "cider" and "wine" and found the goods at issue there to be related. *Id.* at 1201. As the Board correctly noted here, however, *Jacob Demmer* involved an *ex parte* appeal, in which the Board generally adopts a "more permissive stance with respect to the admissibility and probative value of evidence" than it does in an *inter partes* proceeding, in which the burden is on the opposer to introduce evidence that the goods are related. *Id.* at *7 (citing T.T.A.B. Manual of Procedure § 1208 (3d ed. rev. 2 June 2013)). The Board thus did not err in refusing to adopt a general rule that cider and wine are *per se* related or to take judicial notice of the dictionary definitions of "wine" and "cider" in this case.

We have considered Franciscan's remaining arguments but find them unpersuasive. We therefore conclude that substantial evidence supports the Board's factual findings underlying the relevant *DuPont* factors and that the Board did not err in determining, based on the record evidence, that there was no likelihood of confusion.

## CONCLUSION

For the foregoing reasons, we *affirm* the decision of the Board dismissing Franciscan's opposition.

## AFFIRMED